**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Juan VILLEGAS, Defendant–Appellant.**

No. 92–2782.

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 18, 1992.

Decided March 12, 1993.

---

Bruce W. Simon, Kansas City, MO, argued, for defendant-appellant.

Anita L. Mortimer, Asst. U.S. Atty., Kansas City, MO, argued, for plaintiff-appellee.

Before JOHN R. GIBSON and WOLLMAN, Circuit Judges, and STROM *, Chief District Judge.

JOHN R. GIBSON, Circuit Judge.

Juan Villegas appeals his conviction after pleading guilty to conspiring to distribute cocaine in violation of 21 U.S.C. §§ 846, 841(a)(1) (1988), and 21 U.S.C.A. § 841(b)(1)(A) (West Supp.1992). He first argues that the district court erred in refusing to allow him to withdraw his guilty plea when the factual record at his Rule 11 hearing was insufficient to support an admission of guilt. Villegas also claims that he was deprived of his right to due process because, as a result of the sentencing guidelines and the district court's refusal to grant a two-level downward adjustment for acceptance of responsibility, Villegas' sentence after pleading guilty was identical to that which he would have received had he been convicted. We affirm the judgment of the district court.[1]

After indictment, Villegas' retained counsel negotiated a plea agreement with the government. Villegas, his counsel, and counsel for the government all signed the written agreement. The plea agreement provided that the length of Villegas' sentence would depend on the amount of cocaine involved in the conspiracy, and that the court would hear evidence and make factual findings determining that amount.

On March 11, 1992, Villegas entered a guilty plea before the district court. Pursuant to Federal Rule of Criminal Procedure 11(f), the court questioned Villegas to establish a factual basis for the guilty plea. The court then held an additional evidentia-

ry hearing on March 20, 1992, to determine the amount of cocaine involved in the offense.

On May 26, 1992, Villegas, having retained new counsel, moved to withdraw his guilty plea. After a hearing, the district judge denied the motion and sentenced Villegas.

I.

■ Villegas argues that the factual record developed at the plea proceedings on March 11, 1992, was insufficient to support his admission of guilt. Essentially, Villegas argues that his affirmative answers to the district court's questions indicated only that he understood the charges against him, not that he admitted to the conduct described in the charges. Our study of the transcript leads us to conclude that, although some of the questions probed Villegas' understanding of the charges and his answers described nothing more than his understanding, the factual record taken as a whole unequivocally supports Villegas' admission of guilt.

At the March 11 plea proceedings, the district judge interrogated Villegas at length concerning the allegations in the indictment. The district judge asked him if the dates of the conspiracy described in the indictment, October 1, 1990, to October 7, 1991, were correct. Villegas responded, "They sound just about correct. Yes, Your Honor." The court then asked if Villegas accepted those dates as correct for the purpose of pleading guilty to the charge of conspiracy, and Villegas responded "Yes, Your Honor." The court asked Villegas if he understood that he was being charged with conspiracy to distribute cocaine, and if he understood that the other members of the charged conspiracy were Juan Chavez and Raul Genaro Diaz. Villegas responded that he understood, and the district court further probed "Is that correct? Do you agree with that?" Villegas responded "yes." Villegas also agreed that it was

* The Honorable Lyle E. Strom, Chief United States District Judge for the District of Nebraska, sitting by designation.

1. The Honorable Dean Whipple, United States District Judge for the Western District of Missouri.

correct that the conduct, which was his part in the conspiracy, occurred in Kansas City, Missouri. The district court then questioned Villegas about his understanding of the conspiracy charge. Villegas responded that he understood that he was charged with knowingly participating in the conspiracy, that the charge meant the combined actions of the conspirators resulted in the distribution of cocaine, and that he was charged only with doing "his part" in the conspiracy. Having ascertained Villegas' understanding of the charge, the district judge asked:

Q. But you had a common plan or design or intent to distribute cocaine; do you understand that?

A. Yes, I understand.

Q. Is that correct?

A. I had noticed my involvement.

Q. Tell me in your own words what your conduct was?

A. What my conduct was?

Q. What you did as part of this conspiracy?

A. My involvement, my conduct in that was getting cocaine from somebody else and giving it to them.

Q. Okay.

A. That was my involvement.

Q. And then these other two defendants, then they would take it and sell it or give it to someone else, right?

A. I suppose, yes.

After listening to the government's description of the factual basis for the charge, Villegas volunteered a "correction" to the statement that he had given cocaine to defendant Diaz. Villegas said, "I never give, in fact, anything to Diaz. I gave to Chavez.... I gave to Chavez and that Chavez bought and he gave to Diaz." He then stated: "I don't deny the fact that I saw Diaz along with Chavez, but my dealings was directed with Mr. Chavez and never with Diaz." The district court also asked Villegas, "And you were conspiring with others to distribute cocaine is what it boils down to in simple words, that's what you are charged with doing?" And Villegas responded "Yes, Your Honor."

After a lengthy series of questions aimed at ensuring that Villegas understood his constitutional rights and the contents of his plea agreement, the court asked Villegas if there was anything in the plea agreement that he did not understand, and Villegas responded, "No, Your Honor. So far I understand everything." Finally, the district court asked if Villegas was entering into the plea agreement voluntarily, and if the "sole reason" he entered into the agreement was that he was guilty of the offense he was charged with, and Villegas responded, "Yes, Your Honor."

The factual record emerging from this proceeding demonstrates that Villegas sufficiently acknowledged his participation in the conspiracy, and identified the acts that he had performed. The transcript, read as a whole, contains a full and complete description of the acts for which Villegas admitted guilt.

## II.

Villegas next argues that his due process rights were violated because he received the same sentence after his guilty plea that he would have received had he been convicted at trial. Relying on *Santobello v. New York*, 404 U.S. 257, 264, 92 S.Ct. 495, 499, 30 L.Ed.2d 427 (1971) (Douglas, J. concurring), Villegas argues that any plea agreement which does not contemplate substantial assistance to the government, or some other downward departure from the anticipated sentence under the sentencing guidelines, is sufficiently unfair to justify the withdrawal of the guilty plea.

The majority holding in *Santobello*, however, does not support Villegas' novel argument. The Court concluded that "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Id.* 404 U.S. at 262, 92 S.Ct. at 499. Villegas' plea agreement, which he indicated he fully understood, contained no promise of any downward departure based on substantial assistance to the government or any other factor. Villegas admits that the government made no other prom-

ises outside of the agreement which might have induced him to plead guilty. The plea agreement made it clear that Villegas' ultimate sentence would depend on the district court's factual findings as to the amount of cocaine involved in the conspiracy.

As the district court recognized, Villegas, in entering the plea agreement, was simply gambling that the quantity of cocaine would be small enough to require a shorter sentence under the sentencing guidelines. Villegas lost the gamble because the district court, after hearing the evidence, made a factual finding on the amount of cocaine involved in the conspiracy, which resulted in a sentence under the guidelines not substantially different from that which would have been imposed had Villegas been convicted after trial.[2]

Villegas knowingly and voluntarily entered a plea agreement that made the length of his sentence depend on the court's later factual findings. The mere fact that the ultimate result of the agreement was not that which Villegas had hoped for, does not render the agreement unfair under *Santobello* or any other standard of due process.

Finally, Villegas argues that the district court erred in refusing to grant a two-level downward departure for acceptance of responsibility under United States Sentencing Commission, *Guidelines Manual*, § 3E1.1 (Nov.1991). This is a factual determination analyzed under the clearly erroneous standard, *United States v. Miller*, 951 F.2d 164, 165 (8th Cir.1991). The determination of the district court is entitled to great deference. *United States v. Keene*, 915 F.2d 1164, 1170 (8th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1001, 112 L.Ed.2d 1084 (1991). At sentencing, the district court heard arguments by both the government and Villegas' counsel. The government argued that despite his having pled guilty to the conspiracy charge, Villegas offered "incredible" testimony at the evidentiary hearing for determining the amount of cocaine, testimony inconsistent with that of other witnesses and with Ville-

gas' earlier testimony. The district court found that Villegas did not clearly demonstrate acceptance of responsibility for his criminal conduct, and denied the two-point reduction. On the record before us, we conclude that this determination was not clearly erroneous.

We affirm Villegas' conviction, the district court's denial of Villegas' motion to withdraw his guilty plea, and the sentence imposed by the district court.

---

**2.** The district court actually found that the amount of cocaine involved in the conspiracy was smaller than the amount the government charged.